*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

RICHARD SLATER and PEGGY SLATER,

Plaintiffs/Counterdefendants-
Appellees,

v

MARK CUENY and POLLY CUENY,

Defendants/Counterplaintiffs/Third-
Party Plaintiffs-Appellants,

and

WILLIAM A. CLINE and LAURINE M. CLINE,

Third-Party Defendants,

and

BEACH FOREST SUBDIVISION ASSOCIATION,

Defendant.

UNPUBLISHED
June 18, 2020

No. 347223
Oakland Circuit Court
LC No. 2015-150158-CH

Before: GADOLA, P.J., and CAVANAGH and M. J. KELLY, JJ.

PER CURIAM.

Defendants/counterplaintiffs (defendants), Mark Cueny and Polly Cueny, appeal as of right, challenging the October 25, 2018 order adopting the special master recommendation in this property line dispute. We vacate that order and remand for further proceedings.

Plaintiffs/counterdefendants (plaintiffs), Richard Slater and Peggy Slater, and third-party defendants, Laurine Cline and William Cline (the Clines), were neighbors from approximately 1996 until 2015. Plaintiffs and the Clines never had any disputes regarding the boundary line between their properties. The Clines sold their property in 2015 to defendants who almost

-1-

immediately disputed the boundary line between their property and plaintiffs' property. Due to this dispute, plaintiffs filed a complaint for adverse possession, acquiescence, and trespass. Defendants then filed a countercomplaint for the same three counts in addition to quiet title. The case proceeded through the litigation process and eventually was set for a bench trial.

On April 24, 2017, after the bench trial, the trial court entered a judgment ruling in favor of plaintiffs on their acquiescence claim, concluding that they were "entitled to quiet title of the disputed area." The court held that plaintiffs had proved by a preponderance of the evidence that "the parties recognized and treated the black line on the Plot Plans (Slaters' Exhibits 2 and 16) as the boundary line between their residences." Accordingly, the court directed the parties to file amended deeds for their respective properties that show "the new boundary line as reflected by the black line on the Plot Plans (Slaters' Exhibits 2 and 16)." However, the parties were unable to agree outside of court on the location of the new boundary line. Both parties hired surveyors and the resulting surveys also did not agree on the location of the boundary line.

On February 14, 2018, defendants filed a motion to enforce the judgment and order a court-appointed surveyor. Defendants argued that there was a disagreement "as to how to physically implement the Court's Judgment" and noted that it was likely that the parties would continue to engage in disagreements without the court's intervention. Therefore, defendants requested that the court appoint an independent surveyor to physically mark the new boundary line "to finally and fully resolve the dispute between the parties as to the practical implementation and enforcement of the Court's Judgment." At oral arguments on the motion, defense counsel stated that defendants were not attempting to appeal, modify, or change the court's judgment; rather, they merely wanted an independent surveyor to physically mark the boundary line consistent with the court's ruling that it conform to the black line on the plot plans which were plaintiffs' exhibits 2 and 16. Defendants argued that it was within the trial court's inherent powers to enforce its own orders and judgments. The trial court agreed and appointed a special master, Judge Ryan Levy, to review the matter and, if appropriate, hire a surveyor to survey the property consistent with the court's judgment "and that will be the line as the Court found."

Subsequently, the special master hired a surveyor, Michael Millitecs, to complete a survey. Thereafter, the trial court ordered the parties to appear for a status conference on October 25, 2018, to discuss the September 28, 2018 letter sent by Judge Levy to the court, as well as the parties' attorneys, detailing his recommendation as to the boundary line.[1] Following the scheduled status conference,[2] the trial court entered an order stating that it had reviewed Judge Levy's letter and "finds that Judge Levy's recommendation to adopt the boundary line as established by the court-ordered surveyor Mr. Michael Millitecs is appropriate. Accordingly, this Court adopts Judge Levy's recommendation, which sets the boundary line between the two properties (Slater's property – Lot 221 and Cueny's property – Lot 222)." The court then ordered the parties to file amended deeds for their respective properties that reflected the new boundary line.

---

[1] This letter is not in the lower court record.

[2] There is no record of the discussion held at the status conference.

Defendants filed a motion for reconsideration, arguing that the boundary line established by the Millitecs' survey did not comport with the court's April 24, 2017 judgment. Specifically, the new boundary was a curved line—not a straight line as set forth in the plot plans that were incorporated into the court's judgment, i.e., plaintiffs' trial exhibits 2 and 16. Defendants argued that the trial court had previously rejected a similar proposed survey that plaintiffs had presented to the court which had a curving boundary line. In rejecting that survey, the trial court held:

> Now, the exhibits that I referenced are the exhibits that I used in fashioning the Court's opinion and order. Those exhibits, if they - - and there are no curving lines on them. There simply aren't. And to be in compliance with the Court's opinion and order, you must adhere to the exhibits that were used because I referenced them and I use them in rendering my opinion.

Nevertheless, defendants argued, the trial court adopted a new boundary line that was curved—in defiance of its own recognition that a curving line would not be in compliance with its judgment. In effect then, defendants argued, the trial court sua sponte amended its final judgment and denied defendants due process because the court did not hold a hearing where defendants could challenge the Millitecs' survey and the "new" curving boundary.

On December 21, 2018, the trial court entered an order denying defendants' motion for reconsideration. The trial court noted that "its opinion and order clearly determined that the boundary line moved as a result of acquiescence by the previous owners." The court denied that it sua sponte entered an order because defendants had filed a motion to enforce the judgment and requested the court to order a court-appointed surveyor—which is what prompted the court to appoint a special master who retained the surveyor. The court concluded: "Basically, this Court took defendants' motion to enforce judgment under advisement pending Judge Levy's review and it expressly stated that it would adopt the line that Judge Levy (and the court-appointed surveyor) determined comported with its judgment." Accordingly, defendants failed to establish palpable error and merely presented the same issues previously ruled on by the court. This appeal followed.

Defendants argue that the trial court reversibly erred when it sua sponte modified its April 24, 2017 judgment—changing the boundary line from a straight line to a curved line—over 18 months after the judgment was entered. We agree.

"The proper interpretation and application of a court rule is a question of law, which we review de novo." *Henry v Dow Chemical Co*, 484 Mich 483, 495; 772 NW2d 301 (2009). Principles of statutory construction are used when interpreting the Michigan Court Rules. *Id*. First, this Court considers the plain language of the court rule in order to determine its meaning. *Id*. "The intent of the rule must be determined from an examination of the court rule itself and its place within the structure of the Michigan Court Rules as a whole." *Id*. (quotation marks and citation omitted).

The court rule that allows a trial court to modify a judgment is MCR 2.612. MCR 2.612 provides:

**(A) Clerical Mistakes.**

(1) Clerical mistakes in judgments, orders, or other parts of the record and errors arising from oversight or omission may be corrected by the court at any time on its own initiative or on motion of a party and after notice, if the court orders it.

(2) If a claim of appeal is filed or an appellate court grants leave to appeal, the trial court may correct errors as provided in MCR 7.208(A) and (C).

* * *

**(C) Grounds for Relief From Judgment.**

(1) On motion and on just terms, the court may relieve a party or the legal representative of a party from a final judgment, order, or proceeding on the following grounds:

    (a) Mistake, inadvertence, surprise, or excusable neglect.

    (b) Newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under MCR 2.611(B).

    (c) Fraud (intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party.

    (d) The judgment is void.

    (e) The judgment has been satisfied, released, or discharged; a prior judgment on which it is based has been reversed or otherwise vacated; or it is no longer equitable that the judgment should have prospective application.

    (f) Any other reason justifying relief from the operation of the judgment.

(2) The motion must be made within a reasonable time, and, for the grounds stated in subrules (C)(1)(a), (b), and (c), within one year after the judgment, order, or proceeding was entered or taken. Except as provided in MCR 2.614(A)(1), a motion under this subrule does not affect the finality of a judgment or suspend its operation.

(3) This subrule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding; to grant relief to a defendant not actually personally notified as provided in subrule (B); or to set aside a judgment for fraud on the court.

(4) The procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action. Relief may not be sought or obtained by the writs of coram nobis, coram vobis, audita querela, bills of review, or bills in the nature of a bill of review.

In this case, no motion under MCR 2.612 or appeal was filed. Accordingly, for the court to have the authority to amend its judgment, the amendment must have been to correct a clerical mistake. This is because a court can correct a clerical mistake on its own initiative. MCR 2.612(A).

Here, the court entered a judgment on April 24, 2017, that defined a specific property line between the parties' properties—it was a straight-line boundary. On October 25, 2018, the court entered an order that defined a new property line between the parties' properties—it was a curved-line boundary. Accordingly, the change affected the dimensions of the two properties and altered the property line. Therefore, the change between the April 24, 2017 judgment and the October 25, 2018 order was substantive, rather than clerical, in nature. While the trial court properly noted that defendants had moved to enforce the judgment and requested a court-appointed surveyor, defendants merely requested that the boundary line conforming to the judgment be physically marked by an independent surveyor—and, as the court previously acknowledged, that was a straight-line boundary. In appointing the special master and authorizing the hiring of an independent surveyor, the trial court specifically stated in its order that the physical placement of the boundary line had to conform precisely with the court's judgment. The resulting *curved* boundary line obviously did not conform with the court's judgment; thus, by adopting that curved boundary line the trial court did sua sponte modify the judgment. Defendants aptly compare the change to a court changing the amount of a monetary judgment. Therefore, the trial court lacked authority to enter the October 25, 2018 order under MCR 2.612.

Defendants also argue that the trial court denied their constitutional right to due process when it entered the October 25, 2018 order without giving notice or holding a hearing. We agree.

"Whether a party has been afforded due process is a question of law." *Al-Maliki v LaGrant*, 286 Mich App 483, 485; 781 NW2d 853 (2009). This Court reviews questions of law de novo. *Mayor of Cadillac v Blackburn*, 306 Mich App 512, 516; 857 NW2d 529 (2014).

Defendants are essentially arguing that the trial court violated their right to procedural due process when it entered the October 25, 2018 order, which modified the court's April 24, 2017 judgment. "Due process is a flexible concept, the essence of which requires fundamental fairness." *Al-Maliki*, 286 Mich at 485. "The basic requirements of due process in a civil case include notice of the proceeding and a meaningful opportunity to be heard." *Id*. "Where a court considers an issue sua sponte, due process can be satisfied by affording a party an opportunity for rehearing." *Id*. at 485-486.

On October 5, 2018, the trial court gave the parties notice that a status conference concerning the special master recommendation would be held on October 25, 2018. The hearing notice did not inform the parties that the court was considering modifying its April 24, 2017 judgment. The parties were not given the opportunity to file briefs before the conference. The conference was not recorded so it is unknown what was said at the conference. Nonetheless, the hearing notice for the conference was insufficient because it did not include notice of the nature of the proceeding. Without notice of the nature of the proceeding, defendants could not have been prepared to present arguments at a hearing.

It appears that the court decided to adopt the special master recommendation at the status conference. The special master recommendation was for a curved boundary line, while the court's

April 24, 2017 judgment ordered a straight boundary line. A court may sua sponte consider an issue, but it must then give a party an opportunity for a rehearing. While defendants did file a motion for reconsideration in this matter, it was denied by the court without a hearing. Accordingly, defendants were not given the opportunity for a rehearing. Overall, the court's actions deprived defendants of their right to procedural due process because the court's actions were fundamentally unfair.

In conclusion, the trial court's October 25, 2018 order is vacated and this matter is remanded for proceedings consistent with this opinion.

Vacated and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Michael F. Gadola
/s/ Mark J. Cavanagh
/s/ Michael J. Kelly